ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - x
                                    :
UNITED STATES OF AMERICA            :     SEALED INDICTMENT
                                    :
            - v. -                  :     S1 15 Cr. 171
                                    :
EDWARD DURANTE,                     :
        a/k/a "Ted Wise,"           :
        a/k/a "Efran Eisenberg,"    :
        a/k/a "Yulia,"              :
        a/k/a "Ed Simmons,"         :
                                    :
            Defendant.              :
                                    :
- - - - - - - - - - - - - - - - x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5|5|15
```

## COUNT ONE

### (Conspiracy to Commit Securities Fraud)

The Grand Jury charges:

### RELEVANT PERSONS AND ENTITES

1.    EDWARD DURANTE, a/k/a "Ted Wise," a/k/a "Efran
Eisenberg," a/k/a "Yulia," a/k/a "Ed Simmons," the defendant,
was convicted in federal court on or about December 7, 2001 of
conspiracy to commit securities fraud, wire fraud, and money
laundering, as well as making false statements.  Following these
convictions, on or about October 10, 2002, DURANTE was ordered
by a United States District Court to pay disgorgement and
prejudgment interest totaling over $39 million.  In addition,
DURANTE was barred from certain activities in connection with
the securities industry.

2.     EDWARD DURANTE, a/k/a "Ted Wise," a/k/a "Efran Eisenberg," a/k/a "Yulia," a/k/a "Ed Simmons," the defendant, at certain times relevant to this Indictment described an individual not named as a defendant herein ("CC-1") as his accountant.

3.     At all times relevant to this Indictment, VGTel, Inc. ("VGTL") was portrayed by EDWARD DURANTE, a/k/a "Ted Wise," a/k/a "Efran Eisenberg," a/k/a "Yulia," a/k/a "Ed Simmons," the defendant, as a company engaged in part in online sweepstakes. VGTL shares were publicly traded Over-The-Counter, and from approximately April 2012 to April 2014 its share price fluctuated between approximately $.25 per share and $1.90 per share.

4.     At all times relevant to this Indictment, New Market Enterprises, Inc. ("NME") was incorporated by CC-1 and was a large shareholder of public and private shares of VGTL.  NME had an office in New York, New York.

5.     At all times relevant to this Indictment, Zenith Estates, Inc. ("Zenith") was incorporated by CC-1 and was a large shareholder of public and private shares of VGTL.  Zenith had an office in New York, New York.

6.     At all times relevant to this Indictment, TW Ruban Group, Inc. ("TWR"), was purportedly a consulting company, and/or investment adviser that, according to EDWARD DURANTE,

2

a/k/a "Ted Wise," a/k/a "Efran Eisenberg," a/k/a "Yulia," a/k/a "Ed Simmons," the defendant, was involved with VGTL.  Another individual not named as a defendant herein ("CC-2") was also purportedly the President of TWR.

<u>Overview of the Fraudulent Scheme</u>

7.   From at least in or about 2009 through at least in or about March 2015, EDWARD DURANTE, a/k/a "Ted Wise," a/k/a "Efran Eisenberg," a/k/a "Yulia," a/k/a "Ed Simmons," the defendant, perpetrated a scheme to defraud investors by soliciting millions of dollars of funds with false and misleading representations and by failing to invest investors' funds as promised.  In furtherance of the scheme, DURANTE solicited and caused others to solicit more than approximately 100 victim-investors who invested at least $14 million in order to purchase public and private shares of VGTL and other securities.  DURANTE and his co-conspirators fraudulently induced victims to invest by, among other things: (a) lying to certain prospective investors about DURANTE's true identity; (b) failing to disclose to prospective investors that DURANTE had previously been convicted of federal securities fraud violations; (c) failing to inform certain prospective investors, when they were solicited by brokers to purchase VGTL, that they were purchasing VGTL shares from entities controlled by DURANTE and his associates, rather than from the issuer, and for which entities the brokers were acting

as agents; and (d) lying to certain prospective investors by representing that their investments would be used to fund the operations and growth of VGTL, when in reality their investments were used to benefit DURANTE and his co-conspirators.

8.    EDWARD DURANTE, a/k/a "Ted Wise," a/k/a "Efran Eisenberg," a/k/a "Yulia," a/k/a "Ed Simmons," the defendant, utilized a network of brokers and/or investment advisers (the "brokers") across the country to recruit investors to buy shares of VGTL, including from California, the Midwest, New York and Boston.

9.    The brokers utilized different tactics to entice investors.  While in some cases, the brokers were unwitting participants in the scheme to defraud, having been recruited by DURANTE to sell shares in VGTL but not knowing about his scheme to defraud, in other cases the brokers affirmatively and knowingly misled investors in furtherance of EDWARD DURANTE's, a/k/a "Ted Wise," a/k/a "Efran Eisenberg," a/k/a "Yulia," a/k/a "Ed Simmons," the defendant's, scheme.  To that end, certain brokers did not disclose that DURANTE, had previously been convicted of conspiracy to commit wire fraud, securities fraud, and money laundering, as well as making false statements.  In addition, many investors were lied to about DURANTE's true name and were misled regarding conflicts of interest and self-dealing that arose when brokers, who were employed by or associated with

4

entities controlled by DURANTE and his associates, solicited investors to purchase VGTL shares without disclosing that the investors were actually purchasing shares directly from these entities. In still other cases, the broker purchased VGTL stock without the permission of the victim investors.

10.    EDWARD DURANTE, a/k/a "Ted Wise," a/k/a "Efran Eisenberg," a/k/a "Yulia," a/k/a "Ed Simmons," the defendant, and his co-conspirators utilized the entities TWR, Zenith, and NME to conduct the fraud, and portrayed these entities, which were controlled by DURANTE and his co-conspirators, as financial firms that were affiliated with VGTL. Thus, in or about January 2011, both Zenith and NME purchased a large number of public and private VGTL shares. Both entities were subsequently used to transfer VGTL shares to investors. Moreover, in some cases, Zenith and NME were used to take the opposite side of transactions in which investors bought or sold VGTL shares. In addition, investor funds were channeled into Zenith and NME, and the proceeds were then sent to DURANTE and others.

<u>Boston-Based Investors</u>

11.    EDWARD DURANTE, a/k/a "Ted Wise," a/k/a "Efran Eisenberg," a/k/a "Yulia," a/k/a "Ed Simmons," the defendant, and his co-conspirators utilized a number of different individuals from the Boston area to recruit investors to purchase VGTL. One such individual ("Broker-1") met with

DURANTE in or about February 2012 in Manhattan, New York.
DURANTE introduced himself to Broker-1 using the alias "Ted
Wise" and portrayed himself as an experienced investor.  In this
meeting, DURANTE failed to disclose that he had previously been
convicted of numerous securities-related felonies.  DURANTE
represented that he was part of a firm called TWR and claimed
that he was working to make VGTL a successful company.  DURANTE
also persuaded Broker-1 to do work on behalf of VGTL and,
eventually, to encourage others to invest in VGTL.

12.   Beginning in or about May 2012, Broker-1 solicited a
number of friends and acquaintances to invest in VGTL.  In early
2013, EDWARD DURANTE, a/k/a "Ted Wise," a/k/a "Efran Eisenberg,"
a/k/a "Yulia," a/k/a "Ed Simmons," the defendant, traveled to
Massachusetts to raise money for VGTL and to meet with potential
investors, some of whom had been introduced through Broker-1.
DURANTE represented during these meetings that VGTL stock was
going to be big and that the per share price, which in May 2012
was trading at under $1 per share, could rise to as high as $50
per share.

13.   EDWARD DURANTE, a/k/a "Ted Wise," a/k/a "Efran
Eisenberg," a/k/a "Yulia," a/k/a "Ed Simmons," the defendant,
also told Broker-1 that he would give a two-for-one incentive
for investors purchasing private shares of VGTL.  In short,
DURANTE claimed that for those investors purchasing private VGTL

shares, DURANTE would provide twice the amount of shares that had been officially purchased.

14. In or about March 2013, Broker-1 independently learned the true name of EDWARD DURANTE, a/k/a "Ted Wise," a/k/a "Efran Eisenberg," a/k/a "Yulia," a/k/a "Ed Simmons," the defendant. Broker-1 subsequently spoke with another individual ("Associate-1") whom DURANTE had previously introduced to Broker-1 as the president of Zenith. Associate-1 stated to Broker-1 that Associate-1 knew DURANTE's true identity. Associate-1 further stated that DURANTE had requested that Associate-1 not tell anyone DURANTE's true identity.

15. Broker-1 subsequently confronted EDWARD DURANTE, a/k/a "Ted Wise," a/k/a "Efran Eisenberg," a/k/a "Yulia," a/k/a "Ed Simmons," the defendant, who admitted, among other things, that he had been using a false identity and that he had previously served time in jail. DURANTE also stated that CC-1, CC-2, and Associate-1 knew his true identity. DURANTE further admitted that "Efran Eisenberg" and "Yulia" were aliases that he had used. DURANTE stated that if Broker-1 went to the authorities, it would have an adverse effect on the VGTL stock price, which would cause investors recruited by Broker-1 to lose money.

<u>Midwest-Based Investors</u>

16. EDWARD DURANTE, a/k/a "Ted Wise," a/k/a "Efran Eisenberg," a/k/a "Yulia," a/k/a "Ed Simmons," the defendant,

also recruited and caused others to recruit investors from the
Midwest.   One such individual ("Investor-1") was told about VGTL
by an acquaintance.   Investor-1 subsequently decided to invest
in VGTL and was placed in contact with Associate-1, who gave
Investor-1 instructions regarding where to wire money in order
to purchase shares of VGTL.   In 2011, Investor-1 paid Associate-
1 $10,000 for VGTL shares.

17.   In approximately December 2012, Investor-1 was
introduced to EDWARD DURANTE, a/k/a "Ted Wise," a/k/a "Efran
Eisenberg," a/k/a "Yulia," a/k/a "Ed Simmons," the defendant,
and spoke with DURANTE on the telephone during a conference
call, in which Associate-1 also participated.   During the call,
DURANTE spoke about the value of VGTL and represented that the
price would subsequently rise to $3 per share from where it was
trading at the time, which was at values of under $1 per share.
Thus, DURANTE promised Investor-1 an approximately 300-percent
return on his investment.

18.   Investor-1 later met with EDWARD DURANTE, a/k/a "Ted
Wise," a/k/a "Efran Eisenberg," a/k/a "Yulia," a/k/a "Ed
Simmons," the defendant, in December 2012 or 2013.   During the
meeting, DURANTE represented that he was traveling around the
country to raise money to help grow VGTL.   DURANTE also offered
Investor-1 the opportunity to invest additional money with VGTL.
DURANTE represented that Investor-1 could opt to receive

8

Investor-1's money back in six months, with a four percent
increase, or to withdraw Investor-1's money in twelve months, at
which point Investor-1 would be offered a choice between
receiving an eight percent increase in the investment or
converting the investment in VGTL shares at $0.38 per share.
Investor-1 subsequently invested approximately $31,000 of
additional money in VGTL based in part on these representations.
However, Investor-1 never received any VGTL share certificates,
nor did Investor-1 receive Investor-1's money back, or any
additional interest, as DURANTE had promised.

### California-Based Investors

19.    EDWARD DURANTE, a/k/a "Ted Wise," a/k/a "Efran
Eisenberg," a/k/a "Yulia," a/k/a "Ed Simmons," the defendant,
also recruited investors from the California area using another
broker not named as a defendant herein ("CC-3").  CC-3 informed
various investors that CC-3 was associated with TWR.

**Investor-2**

20.    One such investor ("Investor-2") utilized CC-3 as an
investment advisor and had worked with CC-3 for approximately
ten years.  In or about July 2013, Investor-2 noticed a purchase
of approximately $111,000 worth of VGTL stock in Investor-2's
accounts.  Investor-2 had never authorized CC-3 to purchase VGTL
and confronted CC-3.  Among other things, CC-3 stated that the
share price of VGTL would increase to $2 and that everyone would

be able to cash out.  In or about July 2013, the highest price that VGTL shares reached was $1.04 per share.  Thus, CC-3 effectively promised Investor-2 an approximately 100-percent return on investment.

21.  In August 2013, CC-3 introduced Investor-2 to EDWARD DURANTE, a/k/a "Ted Wise," a/k/a "Efran Eisenberg," a/k/a "Yulia," a/k/a "Ed Simmons," the defendant, whom CC-3 introduced as "Ted Wise."  During a phone conversation, DURANTE sought to reassure Investor-2 that VGTL stock's price would increase.  In or about August 2013, VGTL shares were trading at approximately $.95 to $1.11 per share.  Investor-2 met with DURANTE in or about September 2013, and during this meeting DURANTE continued to promote VGTL stock to Investor-2.

22.  CC-3 also mentioned to Investor-2 that CC-3 had a representative at a brokerage firm ("Brokerage-1") who was handling the accounts.  Investor-2 subsequently spoke with a representative at Brokerage-1 who is not named as a defendant herein ("CC-4"), who stated in part that CC-4 had known "Wise" (referring to EDWARD DURANTE, a/k/a "Ted Wise," a/k/a "Efran Eisenberg," a/k/a "Yulia," a/k/a "Ed Simmons," the defendant) a long time and that "Wise" knew what he was doing.  CC-4 also stated that if Investor-2 sold a large amount of VGTL shares, it would cause the share price of VGTL to drop.

**Investor-3 and Investor-4**

23.   Another investor ("Investor-3") and her husband
("Investor-4") also used CC-3 as an investment advisor, and had
been clients of CC-3's for approximately 12 years.   During the
summer of 2013, CC-3 met with Investor-3 and Investor-4 and
asked them to sign documents transferring their accounts to
Brokerage-1.   During this meeting, CC-3 mentioned "Ted Wise" and
said that CC-3 was employed at TWR.

24.   In or about May 2014, Investor-4 was reviewing his
Brokerage-1 account statements when Investor-4 noticed that
approximately $100,000 of Investor-3 and Investor-4's money had
been invested in VGTL without their authorization.   Investor-3
and Investor-4 contacted CC-3, who stated Investor-3 and
Investor-4 would never lose money but might potentially double
their investment.   CC-3 stated that CC-3 could not return the
money to Investor-3 and Investor-4 and attempted to arrange a
phone call with "Wise."   Investor-3 and Investor-4 refused to
speak with "Wise" and were subsequently reimbursed by Brokerage-
1.

**Investor-5**

25.   Another investor ("Investor-5") also used CC-3 as an
investment advisor.   In or about September 2013, Investor-5 met
with CC-3.   During this meeting, CC-3 stated that CC-3 was
working at TWR.   From in or about November 2013 to in or about

11

February 2014, purchases of VGTL stock totaling approximately $900,000 were made without Investor-5's authorization. Investor-5 subsequently confronted both CC-3 and EDWARD DURANTE, a/k/a "Ted Wise," a/k/a "Efran Eisenberg," a/k/a "Yulia," a/k/a "Ed Simmons," the defendant, whom CC-3 had introduced to Investor-5 as "Ted Wise." "Ted Wise" subsequently negotiated a recoupment plan with Investor-5 and guaranteed a 10 percent return on Investor-5's investment. As of March 2015, Investor-5 has not received any of Investor-5's money back.

### Manipulative Trading in VGTL Shares

26.   In an effort to artificially inflate the price of publicly traded VGTL shares, EDWARD DURANTE, a/k/a "Ted Wise," a/k/a "Efran Eisenberg," a/k/a "Yulia," a/k/a "Ed Simmons," the defendant, caused others to engage in trading activity designed to create the appearance of greater demand for VGTL shares than actually existed.

27.   Aware that increased trading volume in VGTL stock would make it more attractive to buyers and investors, EDWARD DURANTE, a/k/a "Ted Wise," a/k/a "Efran Eisenberg," a/k/a "Yulia," a/k/a "Ed Simmons," the defendant, caused others to engage in transactions in which accounts under DURANTE's control bought or sold VGTL stock, while on the same day other accounts under DURANTE's control took the opposite position. The result of these transactions was that DURANTE and his co-conspirators

were effectively taking both sides of a single transaction in VGTL stock in order to artificially inflate the trading volume in VGTL stock as well as its price.

### The Proceeds

28.   In furtherance of the fraudulent scheme and in an effort to conceal his participation in the scheme, EDWARD DURANTE, a/k/a "Ted Wise," a/k/a "Efran Eisenberg," a/k/a "Yulia," a/k/a "Ed Simmons," the defendant, arranged to have the proceeds of the fraud funneled through bank accounts associated with his associates and a family member, including at least $1.5 million.

### The Conspiracy

29.   From at least in or about 2009 through at least in or about March 2015, in the Southern District of New York and elsewhere, EDWARD DURANTE, a/k/a "Ted Wise," a/k/a "Efran Eisenberg," a/k/a "Yulia," a/k/a "Ed Simmons," the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate and agree together and with each other to commit an offense against the United States, to wit, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

## Object of the Conspiracy

30.  It was a part and object of the conspiracy that EDWARD DURANTE, a/k/a "Ted Wise," a/k/a "Efran Eisenberg," a/k/a "Yulia," a/k/a "Ed Simmons," the defendant, and others known and unknown, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon the purchaser and seller, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

## Overt Acts

31.  In furtherance of the conspiracy and to effect its illegal object, the following overt act, among others, was committed in the Southern District of New York and elsewhere:

a.   In or about February 2012, EDWARD DURANTE, a/k/a
"Ted Wise," a/k/a "Efran Eisenberg," a/k/a "Yulia," a/k/a "Ed
Simmons," the defendant, attended a meeting in Manhattan with
Broker-1 in which DURANTE claimed that his name was "Ted Wise."

(Title 18, United States Code, Section 371.)

## COUNT TWO

### (Securities Fraud)

The Grand Jury further charges:

32.   The allegations contained in paragraphs 1 through 28
and 31 are repeated and realleged as though fully set forth
herein.

### The Statutory Allegation

33.   From at least in or about 2009 through at least in or
about March 2015, in the Southern District of New York and
elsewhere, EDWARD DURANTE, a/k/a "Ted Wise," a/k/a "Efran
Eisenberg," a/k/a "Yulia," a/k/a "Ed Simmons," the defendant,
willfully and knowingly, directly and indirectly, by use of the
means and instrumentalities of interstate commerce, and of the
mails, and of the facilities of national securities exchanges,
in connection with the purchase and sale of securities, did use
and employ manipulative and deceptive devices and contrivances,
in violation of Title 17, Code of Federal Regulations, Section
240.10b-5, by (a) employing devices, schemes and artifices to
defraud; (b) making untrue statements of material fact and

omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon purchasers and sellers in connection with the purchase and sale of VGTL stock, to wit, DURANTE fraudulently induced victims to invest in VGTL and caused others to do so and, in furtherance of that scheme, caused others to engage in efforts to artificially boost the share price of VGTL through the purchase and sale of VGTL shares.

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.)

## COUNT THREE

### (Conspiracy to Commit Wire Fraud)

The Grand Jury further charges:

34.  The allegations contained in paragraphs 1 through 28 and 31, are repeated and realleged as though fully set forth herein.

### The Conspiracy

35.  From at least in or about 2009 through at least in or about March 2015, in the Southern District of New York and elsewhere, EDWARD DURANTE, a/k/a "Ted Wise," a/k/a "Efran Eisenberg," a/k/a "Yulia," a/k/a "Ed Simmons," the defendant,

16

and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

### Object of the Conspiracy

36.   It was a part and an object of the conspiracy that EDWARD DURANTE, a/k/a "Ted Wise," a/k/a "Efran Eisenberg," a/k/a "Yulia," a/k/a "Ed Simmons," the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

### COUNT FOUR

#### (Wire Fraud)

The Grand Jury further charges:

37.   The allegations contained in paragraphs 1 through 28 and 31, are repeated and realleged as though fully set forth herein.

## The Statutory Allegation

38.   From at least in or about 2009 through at least in or about March 2015, in the Southern District of New York and elsewhere, EDWARD DURANTE, a/k/a "Ted Wise," a/k/a "Efran Eisenberg," a/k/a "Yulia," a/k/a "Ed Simmons," the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, DURANTE arranged for victim investors to wire funds into bank accounts in Manhattan, for the purpose of making investments in VGTL, knowing that the investments were fraudulently induced by false and misleading statements made by DURANTE and others.

(Title 18, United States Code, Sections 1343 and 2.)

### COUNT FIVE

### (Conspiracy to Commit Money Laundering)

The Grand Jury further charges:

39.   The allegations contained in paragraphs 1 through 28 and 31, are repeated and realleged as though fully set forth herein.

The Statutory Allegations

40.    From at least in or about 2009 through at least in or
about March 2015, in the Southern District of New York and
elsewhere EDWARD DURANTE, a/k/a "Ted Wise," a/k/a "Efran
Eisenberg," a/k/a "Yulia," a/k/a "Ed Simmons," the defendant,
and others known and unknown, willfully and knowingly did
combine, conspire, confederate, and agree together and with each
other to commit offenses against the United States, to wit, to
violate Title 18, United States Code, Section 1956.

41.    It was a part and an object of the conspiracy that
EDWARD DURANTE, a/k/a "Ted Wise," a/k/a "Efran Eisenberg," a/k/a
"Yulia," a/k/a "Ed Simmons," the defendant, and others known and
unknown, knowing that the property involved in financial
transactions represented the proceeds of unlawful activity,
would and did conduct and attempt to conduct financial
transactions which in fact involved the proceeds of specified
unlawful activity, to wit, securities fraud, wire fraud, and
conspiracy to commit securities fraud and wire fraud, in
violation of Title 15, United States Code, Sections 78j(b) &
78ff; Title 17, Code of Federal Regulations, Section 240.10b-5;
Title 18, United States Code, Sections 371, 1343, and 1349,
knowing that the transactions were designed in whole and in part
to conceal and disguise the nature, location, source, ownership,
and control of the proceeds of specified unlawful activity, in

violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Section 1956(h).)

## COUNT SIX

### (Money Laundering)

The Grand Jury further charges:

42.   The allegations contained in paragraphs 1 through 28 and 31, are repeated and realleged as though fully set forth herein.

### The Statutory Allegation

43.   From at least in or about 2009 through in or about March 2015, in the Southern District of New York and elsewhere EDWARD DURANTE, a/k/a "Ted Wise," a/k/a "Efran Eisenberg," a/k/a "Yulia," a/k/a "Ed Simmons," the defendant, knowing that the property involved in a financial transaction represented the proceeds of unlawful activity, knowingly and willfully conducted and attempted to conduct financial transactions which in fact involved the proceeds of specified unlawful activity, to wit, securities fraud, wire fraud, and conspiracy to commit securities fraud and wire fraud, in violation of Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; Title 18, United States Code, Sections 371, 1343, and 1349, knowing that the transactions were designed in whole and in part to conceal and

disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, to wit, DURANTE caused proceeds of the scheme to defraud investors to be routed through accounts of associates and his family member in order to conceal his control of the unlawful proceeds.

(Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.)

## COUNT SEVEN

### (Perjury)

The Grand Jury further charges:

44.   The allegations contained in paragraphs 1 through 28 and 31, are repeated and realleged as though fully set forth herein.

### Statutory Allegation

45.   On or about October 2, 2012, in the Southern District of New York, EDWARD DURANTE, a/k/a "Ted Wise," a/k/a "Efran Eisenberg," a/k/a "Yulia," a/k/a "Ed Simmons," the defendant, having taken an oath before a competent officer and person, in a case in which a law of the United States authorized an oath to be administered, that he would testify, declare, depose, and certify truly, willfully and contrary to such oath, did state and subscribe material matters which he did not believe to be true, to wit, DURANTE, during sworn testimony before the U.S. Securities and Exchange Commission, which was taken for the purpose of enforcing the monetary penalties associated with

DURANTE's 2001 criminal conviction, gave the following false

underlined testimony:

     Q:   Do you go by any other names besides Edward Durante?

(a)  A.  <u>No</u>.

       * * *

     Q:   What other names have you used?

(b)  A.  <u>Edward Simmons</u>.

     Q:   Do you use any aliases now?

(c)  A.  <u>No</u>.

       (Title 18, United States Code, Section 1621.)

<u>**FORFEITURE ALLEGATIONS**</u>

    46.  As a result of committing one or more of the foregoing

securities and wire fraud offenses alleged in Counts One through

Four of this Indictment, EDWARD DURANTE, a/k/a "Ted Wise," a/k/a

"Efran Eisenberg," a/k/a "Yulia," a/k/a "Ed Simmons," the

defendant, shall forfeit to the United States pursuant to Title

18, United States Code, Section 981(a)(1)(c) and Title 28,

United States Code, Section 2461, all property, real and

personal, that constitutes or is derived from proceeds traceable

to the commission of the offenses.

    47.  As a result of committing one or more of the foregoing

money laundering offenses alleged in Counts Five and Six of this

Indictment, EDWARD DURANTE, a/k/a "Ted Wise," a/k/a "Efran

Eisenberg," a/k/a "Yulia," a/k/a "Ed Simmons," the defendant,

shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), any property, real and personal, involved in such offense, and any property traceable to such property.

Substitute Asset Provision

48.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

      a.   cannot be located upon the exercise of due diligence;

      b.   has been transferred or sold to, or deposited with, a third party;

      c.   has been placed beyond the jurisdiction of the court;

      d.   has been substantially diminished in value; or

      e.   has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p), to seek forfeiture of any

other property of the defendant up to the value of the

forfeitable property described above.

　　　　(Title 18, United States Code, Sections 981 and 982;
　　　　　Title 28, United States Code, Section 2461.)


_____                    _____
FOREPERSON                                  PREET BHARARA
                                            United States Attorney


24

Form No. USA-33s-274 (Ed. 9-25-58)

---

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

EDWARD DURANTE,
a/k/a "Ted Wise,"
a/k/a "Efran Eisenberg,"
a/k/a "Yulia,
a/k/a "Ed Simmons,"

Defendant.

---

## INDICTMENT

S1 15 Cr. 171

(18 U.S.C. §§ 2, 371, 1343, 1349, 1621,
1956(h), 1956(a)(1)(B)(i);
15 U.S.C. §§ 78j(b) & 78ff;
17 CFR § 240.10b-5.)

PREET BHARARA
United States Attorney

Foreperson

---

5/5/15   ~~Case~~ Indictment filed under seal. A/w Issued

Pitman, USMJ