H77ddurs
                          Sentence

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,              New York, N.Y.

 4              v.                          15 Cr. 0171(ALC)

 5   EDWARD DURANTE,

 6                   Defendant.

 7   ------------------------------x

 8
                                           July 7, 2017
 9                                         11:12 a.m.

10
     Before:
11
                     HON. ANDREW L. CARTER, JR.,
12
                                           District Judge
13

14                        APPEARANCES

15   JOON H. KIM
          Acting United States Attorney for the
16        Southern District of New York
     BY:  ANDREA M. GRISWOLD
17             Assistant United States Attorney

18   FREEMAN NOOTER & GINSBERG
          Attorneys for Defendant
19   BY:  LEE A. GINSBERG

20            – also present –

21   Special Agent Craig Minsky, Federal Bureau of Investigation

22   Postal Inspector Amber Jordan, U.S. Postal Inspection Service

23

24

25

H77ddurs
Sentence

1          THE CLERK:  Criminal cause for a sentencing in case

2     number 15 Cr. 171, United States v. Edward Durante.

3          Counsel, please state your appearance for the

4     government.

5          MS. GRISWOLD:  Good morning, your Honor.  Andrea

6     Griswold for the government.  I'm joined at counsel table by

7     Special Agent Craig Minsky with the FBI and Postal Inspector

8     Amber Jordan with the United States Postal Inspection Service.

9          THE CLERK:  And for the defendant?

10         MR. GINSBERG:  Good morning, your Honor.  Lee Ginsberg

11    appearing for Mr. Durante, who is seated next to me.

12         THE COURT:  OK.  Good morning.

13         Good morning, Mr. Durante.

14         All right.  We're here today to impose sentence in the

15    case of United States v. Durante.

16         In preparation for today's proceeding, I reviewed the

17    presentence report, a submission by defense counsel as well as

18    a submission by the government.  I also have before me a

19    Consent Preliminary Order of Forfeiture as to specific

20    property/money judgment.

21         Is there anything else that I should have, counsel for

22    the government?

23         MS. GRISWOLD:  Your Honor, you should have paperwork

24    for accepting the plea, which was taken before Magistrate Judge

25    Peck.

H77ddurs

Sentence

1          THE COURT:  OK.  And anything else?  Is there anything

2     else I should have, counsel for the defense?

3          MR. GINSBERG:  Nothing else, your Honor.

4          THE COURT:  OK.  I have reviewed the minutes of the

5     plea colloquy before Magistrate Judge Peck, and I accept

6     Mr. Durante's plea of guilty.

7          Defense counsel, have you reviewed the presentence

8     report with your client?

9          MR. GINSBERG:  I have, your Honor.

10          THE COURT:  And are there any objections to anything

11     in the presentence report?

12          MR. GINSBERG:  No, your Honor.

13          THE COURT:  OK.  Mr. Durante, have you reviewed the

14     presentence report with your attorney?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  All right.  Are there any objections to

17     anything in the presentence report?

18          THE DEFENDANT:  No, your Honor.

19          THE COURT:  Counsel for the government, have you

20     reviewed the presentence report?

21          MS. GRISWOLD:  Yes, your Honor.

22          THE COURT:  Any objections?

23          MS. GRISWOLD:  No, your Honor.

24          THE COURT:  Although I'm no longer required to follow

25     the sentencing guidelines, I'm still required to consider the

H77ddurs
Sentence

1    applicable guidelines in imposing sentence, and to do so it is

2    necessary that we accurately calculate the guideline sentencing

3    range.  The presentence report has the same calculation that I

4    believe was contained in the plea agreement between the

5    parties, but nonetheless, let me just confirm with counsel as

6    to whether or not there is any objection to the guideline

7    calculation as set forth in the presentence report?

8              Counsel for the government?

9              MS. GRISWOLD:  No objection.

10             THE COURT:  Counsel for the defense?

11             MR. GINSBERG:  No objection, your Honor.

12             THE COURT:  Based on the lack of any objection to the

13   guideline range as set forth in the presentence report, I adopt

14   the guideline level as set forth in the presentence report,

15   which has a total offense level of 38 and a Criminal History

16   Category of III, which has a guideline range of 292 to 365

17   months.

18             Any objection to that by the government or the

19   defense?

20             MS. GRISWOLD:  Not from the government.

21             MR. GINSBERG:  No, your Honor.  That's accurate.

22             THE COURT:  OK.  Mr. Durante, is your mind clear as

23   you sit here today?

24             THE DEFENDANT:  Yes, it is, your Honor.

25             THE COURT:  In the last 24 hours, have you had any

H77ddurs
                              Sentence

1    medicine, alcohol, or drugs of any kind?

2              THE DEFENDANT:  No, your Honor.

3              THE COURT:  Defense counsel, do you have any doubts

4    about your client's competence to proceed?

5              MR. GINSBERG:  I have none, your Honor.

6              THE COURT:  OK.  Mr. Durante appears alert.  He has

7    answered those questions appropriately.  I find that he is

8    competent to proceed, and we will proceed.

9              Is there any reason why sentence should not be

10   imposed?

11             Counsel for the government?

12             MS. GRISWOLD:  No, your Honor.

13             THE COURT:  Counsel for the defendant?

14             MR. GINSBERG:  No, your Honor.

15             THE COURT:  All right.  I'll hear from the parties

16   regarding any issues they wish to raise about the appropriate

17   sentence, starting with defense counsel.

18             MR. GINSBERG:  Thank you, your Honor.

19             Your Honor, I think, although every case ends up being

20   an issue of what sentence is sufficient but not greater than

21   necessary, I think in this particular case that is a

22   particularly appropriate phrase.

23             I can't very well come before your Honor today and

24   argue the facts of the case, the merits of what happened, the

25   harm that occurred to people.  I'm well aware, as is my client,

H77ddurs
                         Sentence

1    of his background and the fact that he has now been convicted

2    for a similar crime twice.  But I think what the important

3    factors of 3553 surround in this case is how much of a sentence

4    is enough for somebody even in a crime like this and even with

5    a prior conviction.

6            As I think I argued in my submission to the Court, the

7    guideline range and the recommendation from the Probation

8    Department, if your Honor were to impose that kind of a

9    sentence, would have my client be in jail until his almost

10   mid-80s, so effectively it is a life sentence.  Notwithstanding

11   the government's comments that my client told the Probation

12   Department that he is healthy, he may be healthy now at 64 but

13   as he gets older, we don't know -- any of us don't know what

14   will happen to us, our physical condition.

15           And so the issue is, I believe, should somebody

16   receive a 24-year sentence that would put them in jail for life

17   effectively for this type of crime.  And while there are

18   victims -- and I've read their submissions from some of the

19   victims and they are included also and summarized in the

20   government's submission -- and, obviously, when reading those

21   it's difficult.  And the feelings for those people have to be

22   something that's taken into account in terms of the losses that

23   occurred, and they occurred because of conduct of my client.

24   But that still, in our view, doesn't lead to a conclusion that

25   he needs to be in jail for the rest of his life in the same way

H77ddurs
Sentence

1  that somebody who has committed violent crimes would receive

2  that type of sentence for the obvious reasons.

3          The government's argument is that well may be the case

4  that he would be in jail for the rest of his life, but given

5  the nature of this kind of crime and the fact that it's the

6  second time, even if my client were to be released from jail in

7  his late 70s or early 80s, this is the kind of crime that he

8  could commit regardless of his age.  But I think for everybody

9  or for every defendant that comes before a court on a criminal

10  conviction, there comes a time in their life, regardless of

11  their prior history, when they recognize themselves that this

12  has to be over, that this kind of conduct has to end, and

13  enough is enough.

14          In some way, the Court and advocates at every sentence

15  are sort of in the business of predicting what may happen in

16  the future, what a defendant may do in the future, what we

17  believe is a sufficient deterrent effect, both specific and

18  general.  And it's our view, again, that a sentence as

19  suggested by Probation and even at the bottom of the guidelines

20  is far more than is necessary and far more than is needed both

21  for specific and general deterrence.

22          We suggested to your Honor a sentence of 140 months,

23  which I know it is significantly less than the guidelines.  And

24  we thought hard about what number we should propose, and it's

25  not often that I would propose that kind of a number to a

Sentence

1    court, but so that my submission wouldn't seem totally out of

2    place and frivolous to the Court, I felt that a sentence higher

3    than what he received the last time but not in the range of the

4    guidelines would still be a sufficient deterrent on my client

5    and would be a sufficient deterrent on society.

6        I don't think anybody looking at a sentence -- if he

7    were to receive the sentence that I propose, I don't think

8    anybody looking at that would think, well, I'm going to go

9    ahead and commit a fraud because I might only get 12 years.  I

10   don't think that's logically going to happen.  I think somebody

11   who is going to commit a fraud, especially a substantial fraud,

12   is not going to look to the number that Mr. Durante receives in

13   terms of his sentence, but they're either going to do it or not

14   do it based upon their own views of their own beliefs of what

15   they want to do and how they want to act in society.

16       I also believe that having spent a significant amount

17   of time with Mr. Durante and having had some contact with his

18   wife -- and it was difficult to have contact with her because

19   she lives in Belarus and it is not always that easy to have

20   either email or telephonic contact -- I think he recognizes

21   that this is it for him.  It's it for him no matter what your

22   Honor imposes, whatever sentence your Honor imposes.  But he

23   recognizes it in the sense of how did I do this again?  How did

24   I put myself in this situation again?  What was I thinking?

25   Look what I've done to other people.  Look what I've done to my

H77ddurs
Sentence

1    children.  Look what I've done to my wife.  I think all of

2    those things are things that he thinks about all the time, and

3    we talked about, frankly, on many, many occasions.  It

4    appears -- I can't be completely objective about this as an

5    advocate, but it appears that it sunk in -- maybe finally sunk

6    in, that he just can't keep getting involved in this conduct

7    and expect not to receive severe punishment.

8            While the government points out -- correctly so --

9    that in addition to the prior conviction, he did have the

10   opportunity in the first case to cooperate.  And he violated

11   the terms of the agreement that he didn't receive a cooperation

12   agreement, and we also point out that in this case there is a

13   perjury charge.  He was told prior to pleading guilty in this

14   case -- and I came into the case essentially two days before

15   the plea deadline and spoke to the government.  And I was told

16   very clearly and he was told very clearly even at during the

17   plea allocution, that under no circumstances, no matter what

18   information he had, would the government offer him a

19   cooperation agreement again.

20           Notwithstanding that, we asked the government for an

21   opportunity to meet with them, because it was our belief,

22   particularly Mr. Durante's belief, that he could provide

23   information in the case that went to trial before your Honor

24   and in other matters, since as your Honor is probably clear by

25   now, Mr. Durante knows something about securities and believed

H77ddurs
Sentence

1    that he could assist the government in looking at conduct of

2    other individuals, even by looking at charts of stocks and

3    seeing how they are moving up and down.

4         And so we did -- we were given the opportunity, which

5    we are thankful for -- we did meet with the government in

6    private.  We understood that nothing may come of it, but, of

7    course, he wanted that opportunity to see if he could convince

8    the government that he could be helpful in some way, even if

9    not in this case, in future matters.  We did have -- of course,

10   we said we had material out there that they requested.  We did

11   obtain a computer and documents from Belarus, which was no

12   small trick to do that.  We didn't do anything illegal but we

13   were able to obtain that, and we provided a computer and hard

14   drive to the government.  And, also, we had additional

15   documents that we believe could help the government not only

16   sort of corroborate information in this case, even if they

17   weren't going to use Mr. Durante, but might be helpful in other

18   matters.

19        So he did do that, and I know that it doesn't reach

20   the level at all of cooperation.  It may not even reach the

21   level of something that would form the 5K2, but I think it is

22   something that your Honor could consider under 3553.  And in

23   combination with the other arguments that we have made, that

24   is, his age, the guidelines in this case -- how the guidelines

25   get computed, which has been the subject of much discussion

H77ddurs
Sentence

1    over the last five, six, seven years in fraud cases, how the

2    numbers should work, do the numbers accurately reflect conduct,

3    the additional enhancements that get put on top, that's what's

4    been referred to even in judicial opinions as piling on, that

5    on top of the high base offense level from the loss, two points

6    are added here, four points are added there, another two points

7    are added and it just becomes stratospheric.  And we moved that

8    argument forward in our submission to the Court.  We still

9    think that is the case.  And there are many people, not just

10   advocates for defendants but bar associations and others, who

11   are still arguing to the courts and to the Sentencing

12   Commission that the fraud guideline calculations still need to

13   be adjusted.

14        I think for that reason, and particularly for what I

15   began with, the reason concerning his current age and the

16   amount of time that the government is asking, that Probation

17   recommends, if he should receive that kind of a sentence, it

18   would be more than necessary and would be beyond what is

19   sufficient to punish Mr. Durante.

20        A sentence even of 12 years, even with some good time

21   credit, if he is released he will be in his mid to late 70s, I

22   think, at best.  And I would ask your Honor, therefore, to take

23   all of those factors into consideration and impose a sentence

24   below the guidelines in the range that we suggest to the Court,

25   because that would be sufficient, it would be a deterrent on

H77ddurs
                                Sentence

1    Mr. Durante specifically and in general it would have the

2    appropriate deterrent effect on others in society, Judge.

3                Thank you.

4                THE COURT:  OK.  Just one moment.

5                (Pause)

6                OK.  Let me hear from the government.

7                MS. GRISWOLD:  Thank you, your Honor.

8                First of all, I want to recognize one of the victims

9    from this case that's in the courtroom today, Sonia Johnson,

10   and I believe that at a time appropriate to the Court she would

11   like to be heard today.

12               THE COURT:  OK.

13               MS. GRISWOLD:  This case really stands out in the

14   context of white-collar cases, I think in particular in the

15   context of fraud cases.  I want to start there because the

16   government is asking for a guideline sentence here.  And, you

17   know, we frequently ask the court to impose the guideline

18   sentence where cases fall within the heartland of the conduct

19   for that case, and then we ask the court to consider the

20   3553(a) factors that might apply.  This case does not fall in

21   the heartland of the fraud cases, but we're still asking for a

22   guideline sentence because we recognize that the guidelines

23   here are very significant.  And we've been very thoughtful

24   about thinking about what would be appropriate to ask your

25   Honor for.  We don't think in this case that the guidelines

H77ddurs

Sentence

here overstate the nature of the offense, but we're not seeking a sentence above them.

I think that the guidelines in this case are very much appropriate, and they recognize the facts of this case and they recognize the specific role played by Mr. Durante.  Every single penny of the $15,404,231 that give rise to the loss amount here, every single penny of that money was money that was extracted from the victims in this case.  This is not a case where the government is trying to apply one of the application notes in the guidelines to come up with a theoretical loss amount.  That happens.  In some cases we don't know exactly what was taken from the victims.  We might have a market manipulation case where we have to look at how much did the stock price go up and how much did that impact the market and try to come up with something that grounds an academic discussion.  That's not what we've done here.  We could have done that.  This was a market manipulation case.  We could have come up with bigger numbers, but the number here that drives the guidelines is exactly what it should be.  Every single penny of that is money that Durante stole from his victims.

And all of the enhancements that lead to additional time on the guidelines are also appropriate.  As we said in our submission, we think that they are textbook examples of those enhancements.  In particular, the enhancement for being a leader of the scheme:  Mr. Durante was the leader, he conceived

Sentence

1    it -- he conceived it while he was still in prison from the

2    last fraud scheme, as your Honor knows.  The enhancement for

3    being on supervised release:  He wasn't just on supervised

4    release when he committed this, he had a very similar

5    pump-and-dump scheme where he got 121 months from Judge

6    Mukasey, and while still in prison for that scheme he started

7    thinking about and planning out the current scheme.

8    Back-to-back significant large-scale schemes.  That recidivism

9    really stands out in terms of what comes before the Court.

10        And the victims here.  The victims in this case -- and

11   this is what this case is about -- it is a case where the

12   victims have not just been financially devastated but they have

13   been emotionally devastated, and these types of cases -- we do

14   these types of cases for the victims.  And I think in this

15   case, this case really stands out because in our view if the

16   defendant is given another opportunity to commit this crime

17   again, every single fact and data point we have tells us that

18   he will.  And so when Mr. Ginsberg talks about what is

19   sufficient, we totally agree that we have to look at what is

20   sufficient and no greater than necessary, but in this case we

21   very much believe that a sentence under the guidelines is

22   necessary to ensure that additional people are not victimized.

23        And I think Mr. Ginsberg is right, we don't know

24   exactly what Mr. Durante's health will be.  We don't know

25   exactly at what age would he no longer be able to come up with

Sentence

1   the paperwork, the aliases, the fake documents, the bank

2   accounts to do this again.  But I think what we do know is that

3   a sentence within the guidelines' range certainly would allow

4   us to have some comfort that he won't be able to perpetuate

5   this fraud again.

6       I won't go into all of the specific arguments that I

7   made in our submission.  I note that I outlined a statement

8   from one victim, Mr. Turner, that I think shows that the impact

9   of this crime was not just financial but really had incredible

10  ramifications for his life.  And that is just having met with

11  many of the victims in this case and traveled across the

12  country to meet with them, I can speak to the fact that the

13  sentiment in that letter is shared by Mr. Durante's other

14  victims.

15      But rather than repeat other excerpts from victim

16  statements, particularly in light of the fact that we do have a

17  victim here who wants to speak directly to the Court, I want to

18  conclude my remarks by reading for the Court the statement that

19  Mr. Durante made when he was sentenced in connection with his

20  2001 case before Judge Mukasey.  In that case, at sentencing,

21  Mr. Durante said:

22      "Your Honor, I would just like to apologize to the

23  Court for the time and expensive I've caused, and I realize

24  that these resources are in short supply, and would like to

25  apologize to any of the victims who I have caused economic or

H77ddurs
                              Sentence

1    emotional loss.  And, most of all, I would look to apologize to

2    my friends and my family and my loved ones.  I know that I have

3    caused them harm and damage that I can only hope and pray they

4    will forgive in the future.

5          "I have had almost two years at MCC to reflect on what

6    has taken place, and, unfortunately, I realize that there is no

7    one else to blame but myself.  And I know that I have had the

8    necessary changes that, if given the opportunity in the future,

9    I will lead a quiet, simple life, and one that is lawful and

10   protective.  I hope that I can get any leniency that you see

11   fit today."

12         After that statement, in the context of a 2255

13   proceeding, Judge Mukasey said that the Court "had exposed the

14   penitent oration as nothing but a cynical attempt at

15   manipulation."

16         I don't think the 3553(a) factors help the defendant

17   in this case, and I think that a guidelines' sentence is

18   appropriate.  Thank you.

19         THE COURT:  OK.  Let me hear from Ms. Johnson now.

20   Let's have Ms. Johnson come and take the witness stand.  I will

21   have her sworn.

22         THE CLERK:  She has to come here, please.

23         Please remain standing and raise your right hand.

24    SONIA JOHNSON,

25      called as a witness by the government,

H77ddurs

Sentence

1        having been duly sworn, testified as follows:

2            THE CLERK:  Please state your first and last name and

3    spell it for the record.

4            THE WITNESS:  Sonia, S-o-n-i-a, Johnson,

5    J-o-h-n-s-o-n.

6            THE CLERK:  Have a seat, Ms. Johnson.

7            THE WITNESS:  Thank you.

8            THE COURT:  Ms. Johnson, the acoustics aren't great,

9    so just make sure you lean into that microphone so that we can

10   hear you.  OK?

11           THE WITNESS:  OK.

12           THE COURT:  All right.  Give us a "testing one, two,

13   three."

14           THE WITNESS:  One, two, three.

15           THE COURT:  Get a little bit closer and speak up a

16   little bit more.  Give us a "one, two, three."

17           THE WITNESS:  One, two, three."

18           THE COURT:  Very good.  Go ahead.

19           THE WITNESS:  Your Honor, I came all the way down from

20   San Diego, California.  This sentence here is very important to

21   me because it made a big impact in my life.  Edward Durante, as

22   one of his a/k/a Ted Wise, frauded me with the amount of

23   $1,140,000 in 2014.  He made me sell what we had from my

24   husband.  He took advantage of the passing away of my husband.

25   That money was taken from my retirement life.  He lied, saying

H77ddurs
Sentence

1   that he was a financial advisor with more than 30 years of

2   experience.  Consequently, my entire life changed dramatically.

3   I have been sick since then and still with the psychologic and

4   psychiatric treatment.  Durante ruined my emotional, mental,

5   psychologic life.  I was devastated financially in every way.

6   He affected me in every way.  I am not the same person anymore.

7   I couldn't function, I couldn't think clear, to the point of

8   getting almost crazy.  I was deeply depressed with anxiety.  I

9   was not able to concentrate, made too many mistakes and finally

10  just lost my job.  What I can do now?  Durante does not deserve

11  any mercy -- living a luxury life from somebody else's money,

12  not just me, from different, many innocent people.  This is the

13  second time doing the same thing to many innocent people.  He

14  should be life in prison and rotting forever in jail.

15          How a person can be very evil and cruel?  He deprived

16  me from my normal life in every way.

17          That's it, your Honor.

18          THE COURT:  OK.  Are there any questions from the

19  government for this witness?

20          MS. GRISWOLD:  No, your Honor.  Thank you.

21          THE COURT:  Any questions for this witness by the

22  defense?

23          MR. GINSBERG:  No, your Honor.  Thank you.

24          THE COURT:  OK.  All right.

25          Thank you very much

H77ddurs
Sentence

1          THE WITNESS:  You are welcome, your Honor.

2          (Witness excused)

3          THE COURT:  OK.  Mr. Durante, if you would like, I

4   will give you an opportunity to address me.  You don't have to

5   say anything, but if you would like to say anything, now is

6   your opportunity.

7          THE DEFENDANT:  Thank you, your Honor.  I think I will

8   say just a few words.

9          THE COURT:  OK.  And if you can, just lean into the

10   microphone so I can be sure to hear you.

11          Go ahead.

12          THE DEFENDANT:  First of all, I realize that whatever

13   words I use today, whichever ones I choose, are not going to

14   bear the weight and the emotion of what I feel.  I understand

15   that based on my history, that I'm likely not to be released,

16   but I still have to speak from my heart.

17          I can't sit here and listen to Ms. Johnson.  Although

18   I've never met her, I've spoken to her on the telephone many

19   times.  It breaks my heart to hear what she had to say, and I

20   apologize to her directly.

21          Again, Ms. Griswold read my statement from my

22   sentencing in 2002, and it's hard for me to echo those words

23   knowing that even after I served my term I went out and

24   committed the same crime and created additional sentencing.  It

25   doesn't help for me to say I didn't mean to do this, I had a

H77ddurs
Sentence

1   different plan in mind.  I'm not going to say it.  I am going

2   to apologize to everyone that I have hurt, beginning with the

3   victims.  I realize that I had it within my power for that not

4   to happen.  I don't have an explanation.  I don't have one that

5   is going to make the victims feel better.  I can only offer a

6   heartfelt apology.

7          I know you can't see that perhaps I have changed,

8   perhaps I will not do this again.  I know that is the case, but

9   maybe I'm not going to get a chance to prove it.

10         If I do somehow get a chance to enter into society

11  again and I still have some health and years, I will use that

12  time and energy and the talents and abilities that God has

13  given me to repay some of these people and to repay society in

14  general.  I'm not going to go on about that.  I am just going

15  to simply say that if there is a chance for me, your Honor,

16  things will be different.

17         I wish that I could sit with each of the victims, I

18  truly do, and have a conversation with them and apologize to

19  them face-to-face.  I know that's not possible, and perhaps

20  they wouldn't want to do that anyway, but that's how I feel.

21         And I am sorry again to be before the Court to have

22  used all of this time, all of these resources.  There is no

23  excuse.  I'm sorry, your Honor, and that's simply all I have to

24  say.  Thank you.

25         THE COURT:  OK.  Thank you.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Sentence

1          All right.  Let me note that I recognize that I have

2    the authority to downwardly depart from the guidelines and I

3    have the authority to vary from the guidelines.  I have the

4    authority to vary from the guidelines or downwardly depart from

5    the guidelines based on any sort of disagreement I might have

6    with the guidelines and how they may operate in this particular

7    case.  As defense counsel has noted, it does seem to me that

8    under the circumstances of this particular case, Mr. Durante, I

9    don't think that the way that the guidelines -- the fraud

10   guidelines and the other enhancements that operated in this

11   case is inappropriate.  I know that defense counsel was

12   confining his argument to sort of the vertical application of

13   the guidelines as it related to enhancements and the

14   enhancements under the fraud guidelines and other role

15   adjustments and the like, but it does seem to me, as the

16   government hinted at, that in terms of the horizontal

17   application of the guidelines, a mere two-point addition to his

18   criminal history category for being on supervised release while

19   this crime was committed doesn't truly capture the concerns

20   about recidivism and the need for deterrence for someone who

21   was sentenced to 121 months for extremely similar conduct in

22   the Southern District of New York and then very soon, if not

23   immediately upon release and while on supervised release,

24   started committing essentially the same crime.

25          So, I understand defense counsel's argument.  I am not

Sentence

1   persuaded that the application of the guidelines is

2   inappropriate in this case.

3        I am mindful of the fact that I am required to impose

4   a sentence that is sufficient but not greater than necessary,

5   292 months at the bottom of the guidelines is a very long time.

6   It seems to me that defense counsel's suggestion that the

7   sentence in this case should be above what he received the last

8   time is certainly correct.  I think what defense counsel is

9   looking for, in terms of what defense counsel has asked, is too

10  low under the circumstances of this case.

11       Also, before I go further, I want to thank Ms. Johnson

12  for her testimony here today, thank her for flying here from

13  San Diego to address the Court.

14       Let me tell counsel what my concern is.  The facts of

15  this case are not particularly helpful for Mr. Durante.  The

16  fact that Mr. Durante committed this crime while he was on

17  supervised release for essentially the same crime is also not

18  particularly helpful for Mr. Durante.  It's also not

19  particularly helpful that it seems that Mr. Durante has been

20  committing similar sort of conduct, even though he didn't get

21  any criminal history points for this, since he was about 37

22  years old.  And while I certainly understand defense counsel's

23  argument about the fact that people can grow and change, and I

24  certainly understand that they can, I am troubled by the fact

25  that this conduct for this case started taking place when he

H77ddurs
                              Sentence

1    was in his mid-50s.  He wasn't exactly a young 20-year-old who

2    hadn't quite matured yet.  And he certainly was a mature, grown

3    man when he committed the previous federal securities fraud

4    crime.  So I am troubled by those things.

5              And what concerns me is that given those facts and

6    given the fact that he did -- that he was sentenced to about

7    ten years the last time, ten years and one month, that a range

8    of 24-plus years would seem to sort of flow almost naturally

9    from that and not seem to be particularly excessive, but that

10   is a lot of time.  And I am troubled by the fact that it does

11   seem that it would be easy perhaps in this case to impose a

12   sentence that might actually be greater than necessary to meet

13   the goals of sentencing.

14             I take very well the government's arguments about the

15   need for specific deterrence, and there certainly is a need for

16   specific deterrence.  I also take the government's argument

17   that specific deterrence in this case might not actually work.

18   But there certainly is a need to promote respect for the law

19   and to protect the public from further crimes of Mr. Durante.

20   It does seem to me that a lengthy prison sentence very well

21   might do that, even though if he's in his late 70s, 80s, he

22   certainly, with his health permitting, would be physically

23   capable of committing such a crime again in the future.  As a

24   practical matter, it may be more difficult because technology

25   will continue to advance, and in this case the victims -- many

Sentence

1    of the victims were older.  Not all of them were elderly but

2    they were older and perhaps more prone to being tricked by

3    someone in their mid-50s than, say, an octogenarian might be of

4    getting tricked by someone who is in their 80s or a 60-year-old

5    might be less likely to be tricked by someone who is in their

6    80s trying to perpetuate a similar type of fraud on them.

7              These are the concerns I have.  These are the thoughts

8    I have.  That is a very difficult decision.

9              Again, I'm concerned about the fact that he was

10   sentenced to 121 months and he has this very high guideline

11   range.  And to the extent that the guidelines serve as an

12   anchor psychologically on judges and to the extent that that

13   121-month sentence serves as an anchor on me, I am a little

14   concerned, again, about making sure that I impose a sentence

15   that is sufficient but not greater than necessary.

16             So, for example, this is not this case, but if

17   Mr. Durante had been sentenced to, say, five years on the

18   previous conviction and his guideline range were different and

19   say his guideline range were 12 years and upward -- I am just

20   basically cutting things by half -- it seems to me, perhaps,

21   that it feels like a bigger leap to double that five years to

22   10 years than it is to double that 10 years to 20, even though

23   mathematically it's the same, but there does seem to be some

24   difference perhaps, perhaps psychologically, from going from

25   single digits to double digits, as opposed to when you are

H77ddurs
                                Sentence

1    already in double digits in terms of years.

2              So, I guess, let me ask that question hypothetically.

3    I don't think I need you to answer that question because I

4    think I know what the answers would be.  I would ask the

5    government, if the sentence were five years, do you think 12

6    years would be appropriate, and the government would say yes

7    and the defense would say no.  But that's what I am thinking

8    about.

9              I'll give counsel a chance to address those concerns,

10   to the extent that you can and to the extent that you want to,

11   starting with counsel for the defense.

12             MR. GINSBERG:  I think, frankly, your Honor has the

13   concerns that I tried to address in my submission, written

14   submission and oral submission, that the guideline number is so

15   huge here that it goes beyond what is sufficient and it goes

16   beyond what is necessary.

17             I don't know where the number lies.  Your Honor has

18   indicated that what I've asked for is too low.  I would suggest

19   something closer to what I've asked for would be sufficient but

20   not greater than necessary for the same reasons that your Honor

21   has concerns about, this -- what you indicated, this doubling

22   effect, because we do get into what one judge, who has now

23   retired recently, told me once was football numbers.  We deal

24   with those kind of numbers all the time here and don't realize

25   what they really mean because they come out of a set of

H77ddurs
Sentence

 1  guidelines and we are used to saying those things and those

 2  numbers.  We forget what it actually means in terms of real,

 3  real time.

 4      So I share the concerns your Honor has, and I try to

 5  push forward the same arguments I made before.  What I suggest

 6  is if your Honor believes it is not appropriate, I think it

 7  still should be something in that range and not much higher

 8  than that.  It would still be a very long sentence,

 9  particularly for Mr. Durante.

10      Thank you.

11      THE COURT:  OK.  Let me hear from the government.

12      MS. GRISWOLD:  Your Honor, just briefly, your Honor.

13  On the point about whether or not Mr. Durante could carry out a

14  similar crime, you know, in his 80s, Mr. Durante is a

15  mastermind at these types of frauds, and he often would speak

16  on the phone or over Skype with his victims.  So I think that

17  the record before us indicates that he absolutely could,

18  assuming he is still in good health.

19      You know, as to the point of the amount of the

20  sentence, I'm not saying that the government wants Mr. Durante

21  to die in jail.  That's not for me to say.  What I'm saying is

22  that we want a sentence that serves the goals of sentencing and

23  the goals of this case.  And I think to go from a sentence of

24  12 years the last time to 24, for example, here, that that

25  would be appropriate to ensure that Mr. Durante does not commit

H77ddurs
                                    Sentence

1    this crime again.

2              And I would just note in terms of the calculation that

3    he has been in for two years so far, and, you know, of course

4    there is the reduction in terms of what he actually is likely

5    to serve.  We have given a great deal of thought to what we

6    think is an appropriate sentence, and a sentence at the low end

7    of the guidelines or, you know, even in the range of 24 years

8    we think is appropriate and is necessary here.

9              THE COURT:  OK.  Let me ask the government this, since

10   defense counsel did bring this up and let me make sure that the

11   record is clear on that.  I think that the government in their

12   submission was referring to some of the things that defense

13   counsel had in his written submission before.  Just to be

14   clear, I am not in any way holding against Mr. Durante the fact

15   that he failed to cooperate in this case or anything about

16   failed cooperation in the previous case.  But since defense

17   counsel did bring up the fact that Mr. Durante did meet with

18   the government, even though it was expressed to him that he

19   more than likely was not going to get a cooperation agreement,

20   can I ask the government to just address that, how, generally,

21   those meetings went, and whether or not Mr. Durante was

22   truthful, to the extent that the government could determine, in

23   those meetings?

24             MS. GRISWOLD:  Certainly, your Honor.

25             We had two meetings.  The first meeting I think

H77ddurs
Sentence

1  Mr. Ginsberg accurately summarized was the government going

2  through some of its evidence to see whether or not we could

3  test and see what Mr. Durante had to say on certain points.  It

4  wasn't necessarily uncovering new ground or going into new

5  territory.  And then the second meeting was focused on whether

6  there were other potential schemes that Mr. Durante could help

7  us investigate.

8         At bottom, I think that we felt that the computer that

9  he was able to turn over and, as your Honor knows from

10  presiding over the trial of Mr. Cervino and Ms. Khan, it did

11  contain text messages that we relied on at trial, there is no

12  question about that, and so those were helpful to us.  Whether

13  or not he was being truth in summarizing the facts of the

14  crime, I mean, we knew a lot by that point in terms of talking

15  to him about it, and so I didn't find him untruthful but we

16  didn't probe into a lot of new grounds.

17        We were not able to make use of information that

18  Mr. Durante gave us about other schemes in part because that

19  information largely related to individuals not residing in the

20  U.S. or cases that we didn't think we could make.  There were

21  two short meetings.  I do think the fact that we were able to

22  make use of the Skype messages is appropriate to consider under

23  3553(a), the fact that those efforts were made.  Perhaps that

24  is something to consider within the guidelines or in terms of a

25  matter of months, a modest impact on 3553(a), but in the

H77ddurs
Sentence

1   spectrum of all the other factors that there are before the

2   Court in this case, we think it is a modest factor.

3           THE COURT:  OK.  Thank you.

4           I will be back.

5           (Recess)

6           THE COURT:  Please be seated.

7           OK.  Sentencing is always a very difficult thing to

8   do.  In this case it's particularly difficult given what I

9   stated before my concerns were and given the amount of time

10  that Mr. Durante is facing here.  So I know that Mr. Durante

11  would like to get this behind him, and I know that counsel

12  would like to get this behind them.  I know that the victims

13  want to get closure on this as soon as possible.  But I need to

14  think about this a little bit more.  So, I'd like to adjourn

15  this.

16          And let me find a time when counsel are available.

17  Can we find a date in September, Tara?

18          MR. GINSBERG:  Your Honor, I am beginning a trial

19  before Judge Castel on September 11 that is going to last for

20  about six weeks.  He has not told us yet whether or not we're

21  sitting on Fridays.  He indicated that he would let us know

22  once the trial began and once he saw how the trial was

23  progressing.  So if your Honor was thinking during that period

24  we could put it on for a Friday, that may in fact work.

25          THE COURT:  OK.

SOUTHERN DISTRICT REPORTERS, P.C.<br>(212) 805-0300

H77ddurs

Sentence

1          MR. GINSBERG:  And if it is not going to work, I'll

2     ask him to give us that Friday off.  I would like to have it

3     off anyway, but if it is not going to work, I could advise the

4     Court and we could change the date.

5          THE COURT:  All right.  Do we have September 22nd

6     available, Tara?

7          THE CLERK:  Yes.  We could do it at 11 a.m.

8          THE COURT:  OK.  How is September 22nd at 11?  Does

9     that work for the government?

10         MS. GRISWOLD:  Yes, your Honor.

11         THE COURT:  All right.

12         OK.  Again, I want to thank Ms. Johnson for her

13    testimony here today.

14         And we are adjourned until September 22nd.

15         Anything else from the government today?

16         MS. GRISWOLD:  No, your Honor.

17         THE COURT:  Anything else from the defense?

18         MR. GINSBERG:  No, your Honor.  Thank you.

19         THE COURT:  OK.

20

21                              -   -   -

22

23

24

25